## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**SUSAN C. HILEMAN,**

**Plaintiff,**

**v.**

**LOUIS MAZE,**

**Defendant.**                                          **No. 02-CV-4059-DRH**

### MEMORANDUM AND ORDER

**HERNDON, District Judge:**

## I.  Introduction

Before the Court is a motion for partial summary judgment submitted by Plaintiff Susan C. Hileman ("Plaintiff") on June 29, 2005.  (Doc. 179.)  Defendant Louis Maze ("Defendant"), pro se, offered what the Court construes as a response in opposition on July 28, 2005.  (Doc. 188.)  For the reasons below, the Court denies Plaintiff's motion.

## II.  Background

The facts of this matter have been well summarized by various courts, including this one.  (*See* Doc. 165.)  Briefly, this case arises out of voting improprieties alleged to have occurred during the March, 2000 Democratic primary in Alexander County, Illinois (the "primary").  At the time Plaintiff's action accrued, Plaintiff was a candidate for the Alexander County circuit-clerk position.  Defendant was the sitting Alexander County circuit clerk.  Under Illinois law, Defendant was

charged with administering all elections, including the primary.

Five days before the primary, Illinois state police officers confiscated 681 absentee ballots they suspected had been tampered with.  These ballots were returned on the day of the primary and included in the final vote tabulations.  On the basis of these tabulations, Plaintiff lost the primary 1299-to-1089.

Plaintiff then brought suit in Illinois state court to contest the results of the election.  The Alexander County Circuit Court declared the primary invalid and ordered that a new primary be held.  Sharon McGinness — the winner of the contested primary — appealed this decision, and the Illinois Appellate Court reversed and remanded the case to the Circuit Court, which it charged with determining whether the primary was permeated by fraud.  On remand, the Circuit Court found that fraud indeed permeated the primary, and once again invalidated the election.

That effectively concluded the proceedings in state court.  Plaintiff then filed suit against Defendant Maze and several others in federal court. (Doc. 1.)  This Court originally dismissed Plaintiff's claims; the Seventh Circuit, however, reinstated them.  On remand, this Court granted several motions to dismiss, terminating a number of Defendants and leaving only Plaintiff's **42 U.S.C. § 1983** claim against Defendant Maze.  (Doc. 165.)

In that claim, Plaintiff alleges that Defendant Maze, "with disregard to the election Code of the State of Illinois and under the color of state law" performed various "illegal and fraudulent" acts, including assisting in casting votes on behalf of individuals without their knowledge and mismanaging absentee ballots.  (Doc. 63,

Pl. Am. Compl., pp. 2-4.) Plaintiff argues that this conduct violated the Fourth, Fifth, and Fourteenth Amendments.

Based on the earlier state court proceeding, Plaintiff now argues that the Court should invoke issue preclusion against Defendant on the question of whether he performed "illegal and fraudulent acts" (Doc. 179, p. 10.) Plaintiff supports this reasoning by pointing out that the Illinois court found "by clear and convincing evidence that fraud permeated the electoral process in the 2000 Democratic Primary;" and therefore "Defendant is barred by the doctrine of collateral estoppel from claiming that he did not commit fraud." (Doc. 179, pp. 3-4.) Defendant, pro se, responds that despite having been indicted on several offenses, he has been convicted of just one thing: "mutilation of election materials . . . on or about January 28, 1998 before [he] was appointed as Alexander County's County Clerk." Further, Defendant states that "[t]hroughout this five year ordeal . . . I have never been allowed to testify in court in my defense." (Doc. 188, p. 2.)

### III.  <u>Analysis</u>

The collateral-estoppel, or issue-preclusion, doctrine "is central to the purposes for which civil courts have been established, the conclusive resolution of disputes within their jurisdiction." ***Montana v. United States*, 440 U.S. 147, 153 (1979)**.  Under the doctrine, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." ***Allen v.***

**McCurry**, 449 U.S. 90, 94 (1983) (citing **Montana**); *see also* **Adair v. Sherman**, 230 F.3d 890, 893 (7th Cir. 2000). The doctrine thus "has the dual purpose of protecting litigants from the burden of religigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." **Parklane Hosiery Co. v. Shore**, 439 U.S. 322, 326 (1979).

   "Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." **Allen**, 449 U.S. at 96; *see also* **28 U.S.C. § 1738**. Indeed, as the **Full Faith and Credit Act, 28 U.S.C. § 1738** (the "Act"), provides, judicial proceedings "shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."[1] The Court must, therefore, use Illinois preclusion law to determine the preclusive effect of the Illinois court's judgment. *See* **Matsushita Electric Indus. Co. v. Epstein**, 516 U.S. 367, 373 (1996) (noting that the Act "directs all courts to treat a state-court judgment with the same respect that it would receive in the courts of the rendering state"); **E.B. Harper & Co. v. Nortek, Inc.**, 104 F.3d 913, 921 (7th Cir. 1997).

   Under Illinois law, a court must make the following determinations in

---

[1] The Full Faith and Credit Act has specifically been found to apply to actions brought under **42 U.S.C. § 1983**. *See* **Allen**, 449 U.S. at 103-04.

order for collateral estoppel to apply: (1) the issue decided in the prior adjudication is identical to the one presented in the suit in question; (2) a final judgment must have been issued on the merits in the prior adjudication; and (3) the party against whom estoppel is asserted must have been a party or in privity with a party to the prior adjudication.  *See **American Family Mutual Ins. Co. v. Savickas,** 739 N.E.2d 445, 451 (Ill. 2000)* (citing ***People v. Nance,** 724 N.E.2d 889 (Ill. 2000); **Talarico v. Dunlap,** 685 N.E.2d 325 (Ill. 1997)*).  Additionally, the party sought to be bound must actually have litigated the issue in the first suit, and a decision on the issue must have been necessary to the judgment in the first litigation.  ***American Family Mutual Ins. Co.,** 739 N.E.2d at 451* (citing ***Talarico,** 685 N.E.2d 325*).

Even when the threshold requirements are satisfied,  issue preclusion is not applied unless it is clear that no unfairness will result to the party sought to be bound.   ***American Family Mutual Ins. Co.,** 739 N.E.2d at 451* (citing ***Talarico,** 685 N.E.2d 325; **Kessinger v. Grefco, Inc.,** 672 N.E.2d 1149 (Ill. 1996)*).  A court thus must balance the need to limit litigation against a party's right to an adversarial proceeding in which each party is accorded a full and fair opportunity to present her case.  ***American Family Mutual Ins. Co.,** 739 N.E.2d at 451*.  Also relevant is the party's incentive to litigate the issue in the prior action.  ***Id.*** Even a party who litigated an issue in a prior case might not be estopped if she can "'show that the original litigation was a side show rather than a struggle to the finish.'"  ***Id.*** (citing ***Talarico,** 685 N.E.2d 32* (quoting **G. Hazard, *Revisiting the***

***Second Restatement of Judgments: Issue Preclusion and Related Problems,*** **66 Cornell L.Rev. 564, 584 (1981)); Restatement (Second) of Judgments § 28 (1982)).**

Here, Plaintiff seeks to invoke issue preclusion based on the prior litigation in Illinois state court. In that litigation, Plaintiff sued to contest the results of the March, 2000 Alexander County Democratic primary. She sought an order (1) providing for declaratory and injunctive relief invalidating the primary's results, and (2) preventing Defendant from certifying McGinness as the Democratic nominee. (Doc. 183.) The state court found that fraud permeated the primary, and therefore invalidated the results and ordered that a new primary be held. (Doc. 186 p. 4.)

Applying the test set forth by the Illinois courts, the Court finds issue preclusion inapplicable in this instance. To begin with, the issue decided by the state court is not identical to the issue presented here. The Illinois court was charged with deciding whether "fraud was evident in the electoral process." ***Hileman v. McGinness*****, 739 N.E.2d 81, 83-84 (Ill. App. 2000)**. This Court must decide whether Maze himself deprived Plaintiff of rights secured by the Fourth, Fifth, and Fourteenth Amendments. (Doc. 63, p. 1.) The two inquiries are clearly distinct. Merely because fraud permeated the 2000 primary does not imply that Defendant engaged in conduct violating Plaintiff's constitutional rights.[2]

---

[2] Further, although Plaintiff asks this Court to find Defendant liable and move directly to the damages phase of this litigation, he neglects to suggest how Defendant's alleged participation in the underlying fraud violated his constitutional rights. That Plaintiff has failed to make this connection highlights a

Moreover, there is scant evidence to suggest that Defendant actually litigated the state-court case or had an incentive to do so.  Defendant had little, if any, personal stake in the outcome of the state-court case, and little, if any, motivation to contest the court's finding of fraud.  He was subject to no civil or criminal liability in that matter, and faced only to a worst-case scenario of having an election he presided over deemed invalid.[3]  Here, the stakes are much higher.  Plaintiff has sued for $300,000, not including costs and attorneys fees.  (Doc. 63, pp. 7-8.)  By invoking issue preclusion, this Court would wholly deprive Defendant of any meaningful opportunity to contest the charges underlying this significant potential liability.  That would be patently unfair to Defendant.

## IV.  Conclusion

Therefore, for the reasons stated above the Court **DENIES** Plaintiff's motion for partial summary judgment.  (Doc. 179.)

**IT IS SO ORDERED.**

Signed this 19th day of December, 2005.

/s/            David RHerndon

**United States District Judge**

---

central deficiency in his argument: up to this point, Defendant has not been found personally responsible for fraudulent conduct.

[3] Defendant admits that he was indicted on several criminal charges related to the 2000 primary.  He indicates that all of these charges were dropped, however, after he pleaded guilty to one charge of mutilating ballots in 1998 — two years prior to the events giving rise to this case.